IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DOROTHY SNOW, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:11-cv-813-MEF |
| ) | (WO—Do Not Publish) |
| BOSTON MUTUAL LIFE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
|    Defendant. ) | |

**OPINION**

This is an ERISA[1] case involving two claims for relief brought by Plaintiff Dorothy Snow ("Plaintiff" or "Ms. Snow"), the widow and designated beneficiary of James Francis Snow ("Mr. Snow") under a life insurance policy issued to Mr. Snow's former employer, Meadowcraft, Inc. ("Meadowcraft"), against Boston Mutual Insurance Company ("Boston Mutual" or "Defendant"), the underwriter of the policy, for the payment of certain life insurance benefits. In its Memorandum Opinion and Order dated January 15, 2013, this Court granted summary judgment in favor of Boston Mutual as to Plaintiff's claim for equitable relief under 29 U.S.C. § 1132(a)(3), and it denied the parties' cross-motions for summary judgment with respect to Plaintiff's claim for life insurance benefits under 29 U.S.C. § 1132(a)(1)(B). (Doc. #62.) Specifically, the Court determined that an issue of fact existed as to the proper construction of the term "Normal Retirement date" in Group Life

---

[1] ERISA refers to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

Insurance Policy No. G-24661 (the "Plan"). (Doc. #62, at 17.) Furthermore, the Court determined that a claim for life insurance benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) must be premised on construing the Plan itself, and not summary documents like the Certificate in this case. (Doc. #62, at 14) (citing *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011)). Accordingly, the sole question to be decided is the proper construction of the term "Normal Retirement date" in the Plan, which controls whether life insurance benefits are due to Ms. Snow.

At the time the Court entered its summary judgment opinion, it found that a disputed issue of material fact existed with respect to Meadowcraft's "Normal Retirement Date" based on its "published or accepted personnel practices." (Doc. #62, at 16.) At that time, Boston Mutual's strongest evidence was an Employer's Statement Form filled out by Mary Beth Wilbanks ("Ms. Wilbanks"), Human Resources Coordinator, who certified on October 2, 2002, that Meadowcraft's "Normal Retirement Age in Company" was 65 years old. (Doc. #33-12, at 3.) However, Ms. Wilbanks testified that she could not recall where she located the normal retirement age, (Doc. #35-6, 33:12–22), and she also testified that there were Meadowcraft employees who worked past 65 and that, ordinarily, it was the individual employee who decided when to retire (Doc. #35-6, 23:5–10, 35:15–17). Taken together, there was a dispute of material fact as to what was the normal retirement date under Meadowcraft's "accepted personnel practices." Notably, the Court did not yet have any evidence of "published . . . personnel practices" at this time. (*See* Doc. #33-1, at 3.)

After weighing the evidence and testimony offered by the parties during the bench

2

trial conducted on June 18–19, 2013, the Court now finds that judgment is due to be entered in favor of Defendant Boston Mutual Insurance Company and against Plaintiff Dorothy Snow. In support of this judgment, the Court makes the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT

1. Plaintiff's deceased husband, James Snow ("Mr. Snow"), worked as a salaried employee (warehouse supervisor) for Meadowcraft, a defunct outdoor furniture manufacturer that is not actively involved in the case.

2. Mr. Snow became debilitated with Chronic Obstructive Pulmonary Disease ("COPD") at the age of 59, leaving him fully disabled from May 17, 2002, until the time of his death on August 27, 2009, at age 67.

3. When Mr. Snow became disabled, he made a Waiver of Premium claim under the terms of the Plan, which Boston Mutual approved.

4. Under the terms of the Waiver of Premium provision of the Plan, his life insurance would be kept in force as if he were still an employee, "but in no event beyond the *Normal Retirement date* in effect as of the date of . . . disability." (Doc. #33-1, at 7) (emphasis added).

5. The Plan defines "Normal Retirement Date" as the "normal retirement date provided for by the Policyholder's *published* or *accepted* personnel practices." (Doc. #33-1, at 3) (emphasis added).

6. Meadowcraft provided the Plan to its employees and paid all premiums due under the Plan.

7.     On May 17, 2002, the 401(k) plan in effect for salaried employees defined the "Normal Retirement Date" as "the date [an employee] reach[es] 65."

## II.  CONCLUSIONS OF LAW

1.     Subject-matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 1132(e)(1) (ERISA).

2.     Venue is appropriate pursuant to 28 U.S.C. § 1391.

3.     The Plan is not ambiguous with respect to the term "Normal Retirement Date." Following the evidence presented at trial, the Court finds that "Normal Retirement Date" makes reference to a consistent, determinate normal retirement date "in effect as of the date of . . . disability."  (*See* Doc. #33-1, at 7.)

4.     On May 17, 2002, the date of Mr. Snow's disability, the Court finds that the "Normal Retirement Date" at Meadowcraft was an employee's sixty-fifth birthday.  The Court's finding is based upon the published personnel practice embodied in the 401(k) plan in effect for salaried employees and by the accepted personnel practices established by testimony, particularly that of Larry York and Ms. Wilbanks.

5.     Terms defining retirement age in voluntary life insurance benefit plans made available by Meadowcraft's Human Resources Department—plans whose premiums are paid by the employee who elects to purchase the coverage—are not evidence of Meadowcraft's "published or accepted personnel practices" for determining Meadowcraft's "Normal Retirement Date."  In light of Meadowcraft's provision of basic life insurance coverage to its employees, the purpose of such plans was clearly to supplement employer-provided basic

life insurance.

6. Because the Court has found that the Plan term "Normal Retirement Date" means an employee's sixty-fifth birthday, Ms. Snow is not entitled to any benefits under the Plan, as Mr. Snow's life insurance coverage lapsed prior to his death at age 67.

Consistent with this ruling, the Court will enter a written final judgment in favor of Defendant Boston Mutual Insurance Company and against Plaintiff Dorothy Snow.

DONE this the 9th day of August, 2013.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE